Milton R. GLOVER, Appellant,

v.

UNITED STATES, Appellee.

No. 6565.

District of Columbia Court of Appeals.

Argued Oct. 16, 1972.

Decided March 6, 1973.

Richard H. Ringell, Washington, D. C., appointed by this court, for appellant.

John C. Lenahan, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Joseph E. di Genova, and Harry R. Benner, Asst. U. S. Attys,. and Neil A. Kaplan, Law Student Counsel, were on the brief, for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

GALLAGHER, Associate Judge:

Appellant was convicted of unlawful possession of heroin in violation of D.C. Code 1967, § 33–402 by jury trial on June 1, 1972. Prior to that trial, appellant had been tried for the same offense, but it was aborted by a mistrial granted *sua sponte* by the trial judge. Appellant claims that the second trial was barred by the Fifth Amendment Double Jeopardy Clause.

The first trial was commenced May 3, 1972 in the late afternoon. Appellant and his counsel were present, and a jury was impaneled and sworn. Because of the late hour, the trial was then continued until the following morning. The next morning appellant did not appear and a short continuance was apparently granted in order to locate him. The court finally was advised that appellant had been arrested the night before for a parole violation and that he was then incarcerated at the District jail. The trial judge ordered that appellant be brought to the courthouse and was later informed that he was ill, suffering from heroin withdrawal symptoms.

■ In the presence of counsel for the Government and the defense, although apparently without prior consultation with either as far as the record discloses, the court explained the situation to the jury:

> I was advised a short time ago that the defendant at the jail was seized with withdrawal symptoms, that is, the reaction that comes from being denied heroin that he was addicted to, and he is quite ill. So he is either being treated at the jail or at the hospital section of the jail, or being transferred to the District of Columbia General Hospital for treatment there, and he will not be available.
> . . .

The court found appellant to be involuntarily absent and therefore, under Super. Ct.Crim.R. 43, *see* Wade v. United States, 142 U.S.App.D.C. 356, 441 F.2d 1046 (1971), the proceedings could not continue without appellant's presence. The jury was then discharged.[1]

When the second trial was commenced in June, appellant's counsel moved to dismiss on the grounds that double jeopardy barred retrial. Counsel suggested the court might not be in a position to rule as the transcript of the first trial was not available for the court's examination.[2] Because there was no transcript or other evidence supporting appellant's claim, the motion was denied. Appellant was then tried by a jury and convicted.

Appellant claims the motion should have been granted because the trial court abused its discretion by aborting the first trial, without prior consultation with the parties, on the basis of information received *ex parte* regarding appellant's health. This claim rests primarily on United States v.

Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed. 2d 543 (1971), the most recent Supreme Court decision explaining "manifest necessity," the doctrine which permits reprosecution in situations where double jeopardy would otherwise bar retrial.[3]

In *Jorn*, the trial judge declared a mistrial because he thought that certain prosecution witnesses had been inadequately warned of the dangers of self-incrimination. The trial was aborted despite assurances from both the prosecutor and the witnesses themselves that they had been fully advised of their rights. Upon retrial before the same trial judge, the defendant successfully moved for dismissal on the ground of double jeopardy.

The Supreme Court affirmed, holding that "manifest necessity"

> stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. [*Jorn, supra*, at 485, 91 S.Ct. at 557.]

The Court, although reaffirming a long line of decisions which permitted reprosecution after a mistrial, declined to formulate rules based on categories of circumstances.

■■ When a mistrial is declared, double jeopardy will bar reprosecution unless no other disposition was reasonable.

> [I]n the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his

---

1. The record reflects no objection by either the prosecution or the defense, although it must be said that the record does not disclose that counsel were expressly given the opportunity to be heard. It would have been better practice, unquestionably, to first have advised counsel on the record of the events which had transpired. *See* note 5, *infra*.

2. No reason was given as to why the month which had elapsed since the mistrial was insufficient time to obtain the transcript or other record support.

3. *See* Comment, The Double Jeopardy Clause: Refining the Constitutional Prescription Against Successive Criminal Prosecutions, 19 U.C.L.A.L.Rev. 804, 807–10 (1972).

confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate. [*Jorn, supra* at 486, 91 S.Ct. at 558.]

Although an accused's right under the Double Jeopardy Clause is defined in terms of a "right to have his trial completed by a particular tribunal," that right "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Jorn, supra* at 480, 91 S.Ct. at 555, *quoting* Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

■ In this case, the trial judge initially continued the proceedings when appellant failed to appear. Thereafter, he was informed that appellant was in jail, was suffering from withdrawal symptoms, and was "quite ill." The seriousness of appellant's symptoms is evidenced by the judge's statement that appellant's condition required hospital treatment. For this reason, we think it is reasonable to conclude that appellant might well have been unable to attend trial for at least several days. In these circumstances, it would have been necessary to hold the jury panel for an indefinite period and therefore a mistrial under the circumstances was not unreasonable.

■ Appellant argues, *inter alia*,[4] that double jeopardy bars retrial because the first trial was aborted without first consulting counsel or giving them an opportunity to object. Ordinarily, failure to consult counsel [5] regarding the feasibility of a continuance would result in an undeniable bar to reprosecution under the Double Jeopardy Clause.[6] We think, however,

that the facts in this particular case militated in favor of a mistrial, and gave rise to the type of "manifest necessity" which permitted retrial.

Affirmed.

---

4. Appellant claims for the first time on appeal that *"he was informed"* the trial judge's information regarding appellant's illness was erroneous. (Emphasis added.) Significantly, this claim was not made at trial and, because appellant offers no explanation of why this vague, unsupported claim was not timely presented, we, of course, do not consider it on this appeal.

We note, furthermore, that appellant's counsel was also trial counsel.

5. It hardly needs to be added that such consultations should occur on the record.

6. *See* United States v. Walden, 448 F.2d 925 (4th Cir. 1971) and United States v. Lansdown, 460 F.2d 164 (4th Cir. 1972).