UNITED STATES of America

v.

Carl L. LYNCH et al.

Crim. No. 78–395.

United States District Court, District of Columbia.

Dec. 15, 1978.

James M. Bailey, Washington, D. C., for Carl L. Lynch aka Cobby and Gus Bashien.

Ted Christensen, Alexandria, Va., for Alfred Calfon.

Henry J. Lunardi, Ret., Philadelphia, Pa., for Lee D. Hedson.

James H. Craddock, Washington, D. C., for Milton Battle.

Dennis O'Keefe, Washington, D. C., for John W. Bruner, aka Sweetmeat.

James G. Heldman, Washington, D. C., for Odell Coffey, aka Schoolboy.

William J. Garber, Washington, D. C., for Theresa E. Farrell, aka Ivy Taylor, aka Stripper.

Charles F. Barker, Washington, D. C., for David Ferguson, Jr. aka Bubbie.

David C. Woll, Washington, D. C., for James Ferguson, aka Big Jimmy.

John J. Hurley, Washington, D. C., for Ricky Johnson.

John E. Drury, Washington, D. C., for Tyrone J. Johnson, aka James Johnson, aka Little Jimmy.

Matthew W. Black, Jr., Rockville, Md., for Fred W. Lathern aka Bootsie.

Diane K. Dildine, Rockville, Md., for Theresa Lucas aka Theresa Brooks.

Patrick J. Christmas, Ret., Washington, D. C., for Harry J. Lynch.

John A. Shorter, Jr., Ret., Michael S. Frisch, Washington, D. C., for Myrtle M. Lynch aka Sister.

James M. Jones, Washington, D. C., for Thomas McCloud aka Mr. Wonderful.

William A. Borders, Jr., Ret., Washington, D. C., for Phyllis Oliver aka Phyllis Irvin.

Joseph J. Bernard, Washington, D. C., for Clayton Pina aka Peewee aka Shortman.

Gerald R. Robbins, Washington, D. C., for James Thomas aka Bim Bim.

Arthur M. Levin, Washington, D. C., for Emma Jean Ward.

Patrick J. Christmas, Ret., Washington, D. C., for Irvin Wood, Jr.

Matthew W. Black, Jr., Rockville, Md., for material witness Cynthia Jones.

## MEMORANDUM

OBERDORFER, District Judge.

This case is before the Court now on defendants' motions to dismiss the indictment as barred by the double jeopardy clause of the Fifth Amendment, because of the mistrial declared by the Court on November 27, 1978 over defendants' objection. Based upon the following findings of fact and conclusions of law, the Court concludes that the mistrial was manifestly necessary and that retrial is not barred by the double jeopardy clause. Therefore, the motions to dismiss have been denied.

## FINDINGS OF FACT

1. A superceding indictment, charging 22 defendants with 32 counts, was returned by the Grand Jury on August 18, 1978.

2. Trial began on October 31, 1978 before Judge Thomas Flannery and continued through November 13.

3. On November 14, trial resumed before Judge Gerhard Gesell. Judge Gesell reported that Judge Flannery was ill and that the case would have to be continued. He then continued trial until November 20 at 2:30 p. m. *See* Transcript of Proceedings, November 14, 1978, Appendix 1.

4. On November 20, trial again resumed before Judge Gesell, who continued trial until 9:30 a. m. on November 27, noting that Judge Flannery was undergoing tests at the hospital and expected to be able to resume the trial on that date. Assistant U. S. Attorney Peter Mueller stated to the Court that the jury expected to sit through the end of November. *See* Transcript of Proceedings of November 20, 1978, Appendix 2.

5. As evidenced by Appendix 3, a memorandum from Chief Deputy Clerk Herbert Haller to Judge Gesell, dated November 24, Judge Gesell requested Mr. Haller to in-

quire whether any other active judge would be able to take over the trial. Mr. Haller polled the Court on or before November 24 and reported that none would be able to do so.

6. On November 27, three days after the Haller memorandum, and after two continuances, Judge Gesell again resumed trial and declared a mistrial. He noted Mr. Haller's efforts and noted, in addition, that no senior judges were available and that the jury had been held for five weeks.[1] *See* Transcript of Proceedings, November 27, 1978, Appendix 4.

7. Defendants objected to the declaration of a mistrial; *see* Appendix 4.

8. On November 28, 1978, Judge Gesell entered a written order declaring a mistrial based upon manifest necessity; *see* Order of November 28, 1978, Appendix 5.

9. At the time the mistrial was declared, Judge Flannery was unable to proceed with the trial due to ill health for an indefinite period extending at least into January, 1979; *see* Appendix 5.

10. The mistrial was declared four weeks after the jury had been impanelled. During the two weeks immediately preceding the mistrial, no substantive proceedings had occurred, and the members of the jury had been in the courtroom and under direct court supervision and instruction on only two brief occasions.

11. The jury was not sequestered.

12. The Court takes judicial notice of the outside pressures and influences to which juries in Washington, D. C. may be exposed and which prompt judges frequently to sequester juries in prominent cases.

13. The Court takes judicial notice that the requirements that the jury not speak with one another or with nonjurors is enforced during an ongoing trial by frequent reinstruction by the trial judge. The possi-

---

1. The Court specifically focused upon the delay in terms of the jury:

THE COURT: And what about the jury? This jury has now been held, what is it, five weeks?

Transcript of Proceedings, November 17, 1978 at 1723, Appendix 4.

bility of disobeying these strictures, intentionally or unintentionally, is necessarily greater when continuances leave the jury at large for a long period of time.

14. Judge Flannery had conducted the voir dire of the jury in this case and had unique experience both with the jury and with the facts and issues, as evidenced by the daily transcripts and his rulings on several motions in the case, which would not have been transmitted to a judge newly assigned five weeks after the trial commenced.

15. On November 14, and again on November 20, Judge Gesell obviated a mistrial by granting two continuances in the hope of Judge Flannery's quick recovery. In view of Judge Flannery's continued illness and the unavailability of any judge to resume the trial promptly, on November 27 the remaining alternatives to a mistrial were: (1) holding the jury until Judge Flannery could resume trial no earlier than January, 1979, five weeks later, or (2) holding the jury until the case could be reassigned to another judge and that judge could resume the trial in a manner consistent with his other judicial responsibilities. Judge Gesell canvassed and considered both these alternatives, and exercised sound discretion in rejecting both.

16. At the hearing on November 27, the defendants proposed no alternatives beyond waiting for another judge to become available, *see* Appendix 4.

## CONCLUSIONS OF LAW

■ 1. When a criminal defendant objects to the declaration of a mistrial, retrial is barred unless the mistrial was the result of "manifest necessity." The Supreme Court has frequently cited Justice Story's formulation of the test of manifest necessity:

> We think that in all cases of this nature, the law has invested Courts of justice

with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious causes . . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this as in other cases, upon the responsibility of the Judges, under their oaths of office.

*United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824), quoted in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, n. 18 at 830, 54 L.Ed.2d 717 (1978).

■ 2. No mechanical rule exists for the determination of manifest necessity; nonetheless, it is clear that the standard does not require that a mistrial be "necessary" "[i]n a strict literal sense." *Arizona v. Washington, supra* at 830–31. While generalization in this complex area is hazardous, manifest necessity has most often been found in cases where, for circumstances beyond the control of the parties or the court, it is no longer possible to conduct a fair trial before the judge or jury and no longer possible to reach a fair result based upon the evidence. *See Illinois v. Somerville,* 410 U.S. 458, 460–71, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Necessary to the decision are the careful weighing of defendant's right to have his trial completed by a particular tribunal and the public's interest in fair trial and just judgment; *Wade v. Hunter,* 336 U.S. 684, 688–89, 69 S.Ct. 834, 93 L.Ed. 974 (1949).[2]

---

2. This discussion is limited to the granting of a mistrial over defendant's objection for reasons beyond the parties' or court's control. Cases in which defendant moves for a mistrial or where mistrial is occasioned by prosecutorial misconduct present different situations. *See, generally,* Schulhofer, Jeopardy and Mistrials, 125 U.Pa.L.Rev. 449 (1977).

3. Illness of the judge has long been recognized as an exigency requiring a mistrial and justifying retrial thereafter, *e. g. Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975) (per Roberts, J.), *cert. denied,* 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 256 (1975); *People ex rel. Brinkman v. Barr,* 248 N.Y. 126, 161 N.E. 444 (per Andrews, J., Cardozo, C. J., concurring); *compare Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973), in which the declaration of mistrial by a visiting judge, who found the trial would extend beyond the time he had been scheduled to preside, was held not manifest necessity. Although the number of reported cases involving judges becoming ill are few, many more cases have recognized such illness as a classic example of manifest necessity, *e. g.; United States v. Gori,* 367 U.S. 364, 372, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961) (Douglas, J., dissenting), *United States v. Whitlow,* 110 F.Supp. 871, 876 (D.D.C.1953); *see* 22 C.J.S. Criminal Law § 259 at 676.

4. The manifest necessity of mistrial because of judicial illness is also supported by analogy to another common type of manifest necessity resulting from the deadlocked jury. The decision whether mistrial is manifestly necessary is a "practical matter", *Abney v. United States,* 431 U.S. 651, 658, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The Court has long recognized such practical considerations as the pressures which build on a jury which is unable to reach a verdict after a long period of deliberation, and the possibility that the jury may rush to judgment in order to free itself from its deliberative confinement, *e. g., Keerl v. Montana,* 213 U.S. 135, 137–38, 29 S.Ct. 469, 53 L.Ed. 734 (1909); *Dreyer v. Illinois,* 187 U.S. 71, 85–86, 23 S.Ct. 28, 47 L.Ed. 79 (1902); *Logan v. United States,* 144 U.S. 263, 298, 12 S.Ct. 617, 36 L.Ed. 429 (1892); *United States v. Perez, supra; see Arizona v. Washington, supra* 98 S.Ct. at 832.

The lengthy delay necessitated by Judge Flannery's illness posed problems for the integrity of the decision-making process, similar to that posed by the hung jury in creating "a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors", *id.* Juries in the District of Columbia normally are called for a two-week period. The jury had been given reason to believe it was to be discharged at the end of November. Here, the jury would have been delayed far beyond its initial expectations and might, upon resumption of the trial, as with a hung jury, have reached a precipitous result because of its desire to terminate its duty. Threat to the decisionmaking process is even greater here, however, because of the heightened risk that one or more jurors, free from the daily rigors of trial and daily supervision by the judge, might inadvertently discuss the case with fellow jurors and with nonjurors, *see* finding of fact 13, *supra.*

5. Here, efforts to locate another judge were diligently undertaken, *see* finding of fact 5, *supra.*

6. These efforts, as well as the time period involved, exhaustion of the first alternative of granting continuances in the hope of Judge Flannery's rapid recovery, and the reasons articulated both orally and in a written order, support the Court's conclusion that Judge Gesell's decision that a mistrial was manifestly necessary under the circumstances was neither precipitous nor unconsidered, *compare United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). *See also Glover v. United States,* 301 A.2d 219 (D.C.C.A.1973).

7. The mistrial was not caused by prosecutorial error, *compare Illinois v. Somerville, supra* 410 U.S. at 475, 93 S.Ct. 1066 (White, J., dissenting), nor by any element within the control of the prosecutor or judge, *id.* at 483, n. 2, 93 S.Ct. 1066, (Marshall, J., dissenting) nor by the unavailability of witnesses, nor a technical defect in the pleadings, *id.* at 480, 93 S.Ct. 1066.

8. The risk outlined, conclusion no. 4, *supra,* warranted declaring a mistrial after

the jury had sat idly for two weeks. This conclusion follows under either alternative: retaining the jury another five weeks into January, 1979, the earliest time when Judge Flannery could possibly have been able to resume trial, or another three weeks from November 27 to December 18, when the trial is now scheduled to begin.

9. This is an unusually complex conspiracy case. There are ten defendants, each represented by separate counsel. The indictment contains over 30 counts. The conspiracy count alleges over 60 overt acts by over a score of coconspirators. Judge Flannery had conducted the jury voir dire, had given the jury numerous interim instructions, had become familiar with the law and facts during extended pretrial proceedings and during three concentrated weeks of trial. It is extremely doubtful that a new judge, taking over from Judge Flannery in mid-trial, could have afforded defendants their claimed right to completion of the trial by the same "tribunal", if that term may be applied to court and jury.[3]

10. Any alternative to mistrial would have posed a serious threat to the public's interest in a fair trial ending in a just judgment, based solely upon the evidence in the case; *Wade v. Hunter, supra* 336 U.S. at 688–89, 69 S.Ct. 834. The Court, therefore, concludes that Judge Flannery's illness and the subsequent delays in continuances in the trial, as well as the unsuccessful efforts to find another judge to take the case over, made a mistrial manifestly necessary, such that retrial is not barred by the double jeopardy clause.

Appendix 1

UNITED STATES OF AMERICA
VS.

\#1   Carl L. Lynch
\#5   Milton Battle

\#6   John W. Bruner
\#12  Tyrone Johnson
\#14  Theresa Lucas
\#16  Myrtle M. Lynch
\#17  Thomas McCloud
\#19  Clayton Pina
\#20  James Thomas
\#21  Emma Jean Ward

Crim. No. 78–00395.

United States District Court,

District of Columbia.

Nov. 14, 1978.

The above-entitled matter came on for trial before The Honorable THOMAS A. FLANNERY, U. S. District Judge, and a Jury, commencing at approximately 10:30 o'clock, a. m.

APPEARANCES:

For the Government:

PETER O. MUELLER, Assistant United States Attorney
CHARLES J. HARKINS, Assistant United States Attorney

For the Defendants:

\#1 —Carl L. Lynch—James Michael Bailey, Esq.
\#5 —Milton Battle—Sol Z. Rosen, Esq.
\#6 —John W. Bruner—Dennis O'Keefe, Esq.
\#12—Tyrone Johnson—John E. Drury, Esq.
\#14—Theresa Lucas—Diane Dildine, Esq.
\#16—Myrtle M. Lynch—Michael Frisch, Esq.
\#17—Thomas McCloud—James M. Jones, Esq.
\#19—Clayton Pina—Joseph Bernard, Esq.
\#20—James Thomas—Gerald Robbins, Esq.
\#21—Emma Jean Ward—Arthur Levin, Esq.

REPORTERS: SHIRLEY J. HATCH AND JOAN C. BLAIR

PROCEEDINGS

THE COURT: (The Honorable Gerhard A. Gesell, United States District Judge) Gentlemen, I wanted to report to you and then to the Jury, that Judge Flannery is not feeling well and the case is going to have to adjourn until two thirty on Monday.

I thought that I had best get the Jury in and explain the situation to them and ask

---

**3.** Prior Supreme Court consideration of the same "tribunal" has so far been limited to consideration of the defendant's right to have his trial completed by the same jury. *Compare U. S. v. Jorn, supra* 400 U.S. at 484, 91 S.Ct. 547.

In fact, a change of judge in this complex case is comparable in its impact on the continuity of the trial to the incapacity of the defendant's counsel or even a key juror. *Compare U. S. v. Wayman,* 510 F.2d 1020 (5th Cir. 1975). Yet, mistrial in such circumstances is no bar to further proceedings.

them to be back here at 2:15 next Monday but, before I do that, with respect to each and every one of the defendants here present, you are advised that your bond requires you to be in this courtroom at 2:15 next Monday, which will be November 20th, and that requirement of bond applies to each and every one of you.

Bring in the Jury.

(Whereupon, the Members of the Jury resumed their seats in the Jury Box)

THE COURT: Ladies and gentlemen of the Jury, I am Judge Gesell from the courtroom next door.

Judge Flannery is not feeling well, and so I am pinch hitting for him here, briefly, to give you this announcement: The case is going to be continued now until Monday at 2:30, so I am excusing you at this time.

You are to report back next Monday, January 20th to this courtroom at two thirty. Now, needless to say, you must not discuss the facts of the case with anyone, or among yourselves. Don't let anyone talk to you about the case whether they are connected with the case or not. You will not be sent out on any other assignment in the meantime and report here promptly at two thirty on Monday, November 20th. You are now excused until that time.

(Whereupon the Members of the Jury were excused)

MR. DRURY: I have one matter, Your Honor. Judge Flannery informed counsel and the defendants at an earlier point in time that next week would be half-days. Is that still abiding or is it up in the air at this point?

THE COURT: Well that is the reason why I have set two thirty for Monday. I would say to you that I have suggested to Judge Flannery and his people that possibly someone else could pinch hit on his Court of Appeals assignment so that he would be able to sit full days, but I have not been advised about what his decision is on that, and Judge Flannery evidently expects to be back and it may be that he will arrange for some other Judge to sit in his place, but at present—as I am presently advised—it is 2:30 Monday, and that is all I know.

MR. DRURY: Thank you, Your Honor.

(Whereupon the hearing was adjourned to be resumed at 2:30 Monday November 20th.)

CERTIFIED

(S) Joan C. Blair
OFFICIAL COURT REPORTER

Appendix 2

UNITED STATES OF AMERICA
VS.
CARL L. LYNCH, aka
COBBY, et al.,

Defendants.
Crim. No. 78–395.
United States District Court,
District of Columbia.
Dec. 12, 1978.

The above-entitled matter came on for hearing in open court, before The Honorable GERHARD A. GESELL, U. S. District Judge, commencing at approximately 2:30 p. m.

APPEARANCES:

For the Government:
PETER MUELLER, Assistant U. S. Attorney
Charles Harkins, Assistant U. S. Attorney

For the Defendants:
James M. Bailey, Esq.
Sol Z. Rosen, Esq.
Dennis O'Keefe, Esq.
John E. Drury, Esq.
Diane Dildine, Esq. (Mrs.)
Michael Frisch, Esq.
James M. Jones, Esq.
Joseph Bernard, Esq.
Gerald Robbins, Esq.
Arthur Levin, Esq.

Official Reporter: Shirley J. Hatch, C. S. R.

## PROCEEDINGS

(The defendants are not all present.)

THE DEPUTY CLERK: Criminal Case No. 78–395. United States versus Carl L. Lynch, also known as Cobby, et al.

All the defendants are not here.

MR. JONES: My client is not here. He was told to be here at 2:15. Didn't you—?

THE COURT: That is what I said.

MR. JONES: I don't know what has happened to him. He has always been prompt in this matter, and I don't really know what representation to make to the court except to inform you he is not here, so you will be aware of it.

I have no other explanation.

(Referring to Defendant No. 17, Thomas McCloud.)

MR. MUELLER: Three defendants are not here, Your Honor. I only count Count 7. Here is Emma Jean Ward. Miss Ward is coming in.

MR. DRURY: (entering the courtroom) Good afternoon, Your Honor.

THE COURT: I came on the bench a little early because I am about to charge a jury next door. I didn't want to keep the Jury waiting any longer than necessary. But, I am certainly going to wait until 2:30.

I will tell you, gentlemen, now, that Judge Flannery is not going to be able to be here this week, and he has asked me to advise all of you that he wants the case continued until 9:30, Monday, which will be, I believe, the 27th of November.

He is undergoing some tests at the hospital, and fully expects to be here on the 27th.

It is a short week, as he pointed out, with Thanksgiving coming up, taking over the latter part of the week.

And so what I'm doing is continuing the case a further week until the 27th.

Now, I don't know what the situation is with the Jury, but I thought that possibly, it would be important to inquire of the jurors whether this continuance creates any special hardship for an individual juror.

So, that, if there is need perhaps to excuse one or two jurors, it could be done.

Naturally, I have not heard anything from any jurors, and I have no information about it at all.

If, after I have had the jury in here and gone over this, and there is any defendant missing, I want a bench warrant issued for that defendant immediately by the U. S. Attorney, that he be arrested and brought in.

So, we will give them another few minutes while I talk with the jury. You can bring the jury in.

MR. MUELLER: Your Honor, may I address the court?

THE COURT: Yes. Wait just a minute. (referring to the jury being brought in by the U.S. Marshal.)

(out of the presence of the Jury)

MR. MUELLER: Your Honor, with respect to the court's inquire of the jury, I would respectfully suggest to the court that since at this time, and really throughout the period up and beyond Monday, we would still be within the original estimate of the time in which the jury was expected to be here, that it might perhaps be more appropriate on next Monday when Judge Flannery comes in for him to address them on whether or not there is going to be any further problem, and determine whether or not anyone needs to be excused at that time.

Since all of the jurors fully expected to sit in this case until the end of November.

THE COURT: All right. I would much rather leave it to Judge Flannery anyway.

(Whereupon, the jury enters the courtroom.)

(2:32 p. m.)

THE COURT: Are all the jurors here?

Deputy U. S. MARSHAL: Yes, Your Honor.

THE COURT: All right. I have to again tell you that Judge Flannery is still ill. He is not seriously ill. He is undergoing some tests at the hospital. He assures me that he has every reason to believe that he will be back and ready to proceed with the trial next Monday, which is November 27th.

Because of the short week, this week, with the Thanksgiving Holidays, where you would be off in any event, he asked me to tell you what the situation is.

As I have explained it to the lawyers, and, to excuse you with the same admonition until next Monday at 9:30 in the morning.

I, again, want to caution you not to let anybody talk to you about the case, whether they are connected with the case or not, and not to discuss any aspect of the case among yourselves at this time.

I understand that you all anticipated a rather long trial in any event, so, we are still within the time table.

That Judge Flannery must have talked to you about in the beginning.

I ask you to bear with the situation. It is something that cannot be remedied in any way, but to wait until he comes back.

But, everything indicates that he will be with you next Monday at 9:30. So, you have an extra long Thanksgiving weekend, so-to-speak. You are now excused until next Monday at 9:30.

(Whereupon, the Jury leaves the courtroom.)

THE COURT: Now, let's identify the defendants that aren't here, which defendants are not here?

MR. MUELLER: Your Honor, Thomas McCloud, and Clayton Pina are not here.

THE COURT: And what is the second name?

MR. MUELLER: Clayton Pina. (spelling) P I N A.

THE COURT: Bench warrants for both of them right away.

I am going to be here with my other business in the next courtroom. If some special situation about these men comes to your attention, of if you produce them by 4 o'clock, I may be able to keep them from getting locked up.

MR. JONES: Thank you very much, Your Honor.

Appreciate that.

THE COURT: All right.

Thank you, gentlemen.

(Whereupon, at 2:35 p. m., the above-entitled matter was adjourned, to reconvene the following Monday, November 27, 1978, at 9:30 a. m.)

CERTIFICATE OF REPORTER

It is certified by the undersigned Official Reporter of the U. S. District Court for the District of Columbia that the foregoing transcript is the official record of the proceedings indicated.

(S) Shirley J. Hatch
OFFICIAL REPORTER

Appendix 3

United States District Court
For the District of Columbia
Office of the Clerk
3rd and Constitution Avenue, N.W.
Washington, D. C. 20001
November 24, 1978

MEMORANDUM TO:   Judge Gerhard A. Gesell
FROM:   Herbert N. Haller
  Chief Deputy Clerk

Pursuant to your request which was routed to me through Judge Pratt, I have inquired of every Active Judge whether they would be able to take over the trial of Judge Flannery's narcotics conspiracy case. Everyone of them responded that they would be unable to do so on such short notice because they have other matters already on their calendars.

cc: Judge John H. Pratt

**584**

Appendix 4

UNITED STATES OF AMERICA

vs.

CARL L. LYNCH, aka
COBBY, et al.,

Defendants.

Crim. No. 78–395.

United States District Court,

District of Columbia.

Nov. 27, 1978.

The above-entitled matter came on for hearing in open court before The Honorable GERHARD A. GESELL, U. S. District Judge, commencing at approximately 9:30 a. m.

APPEARANCES:

For the Government:

PETER O. MUELLER, Assistant U. S. Attorney
CHARLES J. HARKINS, Assistant U. S. Attorney

For the Defendants:

#1—Carl L. Lynch—James Michael Bailey, Esq.
#5—Milton Battle—Sol Z. Rosen, Esq.
#6—John W. Bruner—Dennis O'Keefe, Esq.
#12—Tyrone (James) Johnson—John E. Drury, Esq.
#14—Theresa Lucas—Diane Dildine, Esq.
#16—Myrtle M. Lynch—Michael Frisch, Esq.
#17—Thomas McCloud—James M. Jones, Esq.
#19—Clayton Pina—Joseph Bernard, Esq.
#20—James Thomas—Gerald Robbins, Esq.
#21—Emma Jean Ward—Arthur Levin, Esq.

OFFICIAL REPORTER:

Shirley J. Hatch

PROCEEDINGS

THE DEPUTY CLERK: Criminal Case No. 78–395. United States of America versus Carl Lynch, et al. Will the defendants answer to their names, please? Carl Lynch?

MR. LYNCH: I am Carl Lynch.

THE DEPUTY CLERK: Milton Battle?

MR. BATTLE: Here.

THE DEPUTY CLERK: John W. Bruner?

MR. BRUNER: Here.

THE DEPUTY CLERK: Tyrone Johnson?

MR. DRURY: James Johnson. Here.

THE DEPUTY CLERK: Theresa Lucas?

MS. LUCAS: Here.

THE DEPUTY CLERK: Myrtle Lynch?

MRS. LYNCH: Here.

THE DEPUTY CLERK: Thomas McCloud?

MR. MC CLOUD: Here.

THE DEPUTY CLERK: Clayton Pina?

MR. PINA: Here.

THE DEPUTY CLERK: James Thomas?

MR. THOMAS: Here.

THE DEPUTY CLERK: Emma Jean Ward?

THE COURT: Is she here?

MR. LEVIN: Your Honor, Ms. Ward has not arrived yet.

THE COURT: Gentlemen, the Court has been in touch with Judge Flannery. His medical situation is such that he will not be able to continue with the trial.

Accordingly, the Court has been considering the necessity of declaring a mistrial.

Over the weekend, the Chief Deputy Clerk, Mr. Herbert Haller, at the Court's request, polled the judges of the Court, and I have a memorandum from him dated November 24th which is addressed to me, and says:

"Pursuant to your request, which was routed to me through Judge Pratt, I have inquired of every active judge whether they would be able to take over the trial of Judge Flannery's narcotic conspiracy case. Every one of them responded that they would be unable to do so on such short notice because they have other matters already on their calendars."

I, of course, also advised Mr. Haller of my unavailability. I am in trial today, and will continue to be for some time.

He polled the active judges. As I believe some of the lawyers here are aware, we have also in the senior judge category judges who have occasionally been willing to take a criminal case, confronting special

problems right now. Judge Corcoran, for example, is just recovering from an operation on his hip.

So, I see no alternative but to declare a mistrial, in this case, which will require that this case be tried at a later date, which I will not attempt to set at this time, until a judge has been assigned to the matter.

It will be necessary for each and all of the defendants to remain under the bonds that have been set in this case, and I now wish to inform each and every one of them that their bond is still in effect, and that any failure to comply with the conditions of their individual bonds will subject them to a penalty of five years.

I don't know whether any of the attorneys here wish in any way to make any comment prior to my bringing in the jury?

MRS. DILDINE: Yes, Your Honor, definitely. On behalf of Theresa Lucas, we would object to a mistrial.

THE COURT: On what grounds?

MRS. DILDINE: On the ground that we would be willing to wait until a judge is available, and I see no necessity of declaring it at this time.

THE COURT: How long do you think you would be willing to wait? Six months?

MRS. DILDINE: I don't think it would take nearly that long for a judge to become available. I understand that the judges right now are all on trial, but I would think that some arrangement could be made with one.

THE COURT: And what about the Jury? This jury has now been held, what is it, five weeks?

MRS. DILDINE: I understand that, Your Honor. It would be difficult.

THE COURT: Your objection is overruled.

MR. DRURY: On behalf of James Johnson, Your Honor, I object to a mistrial in this case for the grounds stated by Mrs. Dildine.

THE COURT: I will of course overrule your objection, also, Mr. Drury.

MR. BERNARD: Your Honor, if it please the court, on behalf of Clayton Pina, we so join the motion.

MR. O'KEEFE: Also, on behalf of John Bruner, we join in the motion.

MR. LEVIN: On behalf of Emma Jean Ward, we join in the motion, also.

MR. ROSEN: On behalf of Milton Battle, we also join.

MR. FRISCH: Your Honor, we join, in behalf of Myrtle Lynch.

THE COURT: All of you experienced trial counsel know that that motion has no merit.

It is overruled.

Bring in the jury.

(Mr. Jones and Mr. Robbins were standing.)

Will you ask that defendant to remain after I have dismissed the jury? (referring to Emma Jean Ward, just arrived.)

(Whereupon, at 9:40 a. m., the Jury enters.)

THE COURT: You see I'm on the Bench again. Judge Flannery's health has not, does not permit him to return to this trial in the near future, and, accordingly, I have just advised the defendants and their counsel that I am declaring a mistrial, which means that the case will have to start all over again at a later date when a judge becomes available to handle the case, and it means that you are all now today excused from further jury service.

I know that you have patiently listened to the two or three weeks that this trial was underway, and I am sure some of you may have been quite inconvenienced by the uncertainty, and the fact that we have had to

586

continue it once or twice, hoping that Judge Flannery would be able to take it up again.

I want to thank you all for your service and your consideration of the court, and in this very unusual and special problem in this connection.

I now excuse all of you. I don't imagine that any of the attorneys will attempt to communicate with you but if they do my advice to you is that you don't discuss the case with them in any way.

You are now excused.

(Whereupon, at 9:41 a. m., the Jury leaves.)

THE COURT: Now, Ms. Ward, I imagine you were late because of the weather?

MS. WARD: Well, sir, I was caught. Me and my son, at the District Line, and I was walking him to the bus stop and a car accidentally hit him a little bit. And this guy, he was all right, seemed to me, but he wouldn't go to that hospital alone, so I had to take him to the hospital, and I had to go with him.

And, therefore, that is what made me late.

THE COURT: Well, I appreciate that that is very unusual circumstances and I think you did very well to get here when you did. I want you to understand that I have declared a mistrial in this case. You remain under your same bond. You are required to comply with the conditions of that bond. There is a penalty of five years if you do not.

Defendants will all be notified later of the new trial date.

MR. JONES: Off the record.

(Off the record.)

THE COURT: You will put this in the jacket somewhere, the memorandum of Mr. Haller.

(Whereupon, the above-entitled matter was adjourned.)

CERTIFICATE OF REPORTER

It is certified that the foregoing transcript is the official record of the proceedings indicated.

(S) Shirley J. Hatch

OFFICIAL REPORTER

Appendix 5

ORDER

It appearing that the trial judge assigned to this case has been hospitalized, remains under continued doctors' care, and will be unable to proceed with this case for an indefinite time no earlier than 1979, and that the other active judges of this court have been polled and it being established that no active judge is available to continue the trial, the court *sua sponte* declares a mistrial for reasons of manifest necessity.

(S) Gerhard A. Gesell
United States District Judge