598 F.2d 132
 194 U.S.App.D.C. 213
 UNITED STATES of America
v.
Carl L. LYNCH, a/k/a Cobby, Appellant.
UNITED STATES of America
v.
Theresa LUCAS, a/k/a Theresa Brooks, Appellant.
UNITED STATES of America
v.
Thomas McCLOUD, a/k/a Mr. Wonderful, Appellant.
UNITED STATES of America
v.
Clayton PINA, a/k/a Peewee a/k/a Shortman, Appellant.
UNITED STATES of America
v.
James THOMAS, a/k/a Bim Bim, Appellant.
UNITED STATES of America
v.
Emma Jean WARD, Appellant.
UNITED STATES of America
v.
Milton BATTLE, Appellant.
UNITED STATES of America
v.
Myrtle M. LYNCH, a/k/a Sister, Appellant.
UNITED STATES of America
v.
John W. BRUNER, a/k/a Sweetmeat, Appellant.
UNITED STATES of America
v.
Tyrone J. JOHNSON, a/k/a James Johnson a/k/a Little Jimmy, Appellant.
 Nos. 78-2274 to 78-2280, 78-2294 through 78-2296.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 28, 1978.
Decided Dec. 29, 1978.
Certiorari Denied Feb. 26, 1979. See 99 S.Ct. 1287.
 
 Peter O. Mueller, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and Charles J. Harkins, Jr., Asst. U. S. Attys., Washington, D. C., were on the pleadings, for appellees.
 Michael S. Frisch, Washington, D. C., for appellant in No. 78-2294. He also presented argument on behalf of all other appellants.
 Dennis M. O'Keefe, Washington, D. C., for appellant in No. 78-2295.
 James Michael Bailey, Washington, D. C., for appellant in No. 78-2274.
 John E. Drury, Washington, D. C., for appellant in No. 78-2296.
 Arthur Marc Levin, Washington, D. C., for appellant in No. 78-2279.
 James H. Craddock, Washington, D. C., for appellant in No. 78-2280.
 Diane K. Dildine, Rockville, Md., for appellant in No. 78-2275.
 Joseph J. Bernard, Washington, D. C., for appellant in No. 78-2277.
 James Mitchell Jones, Washington, D. C., entered an appearance for appellant in No. 78-2276.
 Gerald R. Robbins, Washington, D. C., entered an appearance for appellant in No. 78-2278.
 Before FAHY, Senior Circuit Judge, and LEVENTHAL and WILKEY, Circuit Judges.
 Opinion Per Curiam.
 
 PER CURIAM:
 
 1
 This case is before us on expedited consideration of appellee's motion for summary affirmance and appellant Pina's motion for summary reversal.
 
 
 2
 By an indictment returned on August 18, 1978, the ten appellants were charged with participating in a narcotics conspiracy and related offenses.[1] The indictment charged a conspiracy involving misuse of medical prescriptions by doctors in several states, as a source of drugs, and a number of channels of distribution. We were advised at oral argument that this is the culmination of a 2-year major investigation.
 
 
 3
 Trial commenced on October 30, 1978, before Judge Thomas A. Flannery. In due course, a jury was selected and sworn and counsel made opening statements. The Government presented a large number of documents and 43 witnesses, most of whom were custodians of documents. Then, November 13, 1978, Judge Flannery took ill.
 
 
 4
 On November 14, 1978, Judge Gerhard Gesell took the bench and announced that, due to Judge Flannery's illness, the trial would be continued until November 20, 1978. On November 20, 1978, Judge Gesell again continued the trial, due to Judge Flannery's illness, until November 27, 1978. On November 27, 1978, Judge Gesell again took the bench and announced that Judge Flannery would be unable to continue with the trial for health reasons and that the active judges of the court, having been polled as to whether they would be able to take over the trial, replied in the negative, since they already had other matters on their calendars.[2] Judge Gesell announced that he saw no alternative but to declare a mistrial with a new trial to be set at a later date. Before bringing in the jury, Judge Gesell allowed defense counsel an opportunity to comment. At this point the defense attorneys objected that a mistrial was not necessary at this time, and that the defense was willing to await the assignment of a new judge. The objections were overruled. A written order declaring a mistrial for reasons of manifest necessity was filed on November 28, 1978.
 
 
 5
 The case was reassigned to Judge Louis Oberdorfer. At a status call conference held November 29, Judge Oberdorfer set hearings on motions for December 14, with trial set for December 18, 1978. Defendants moved to dismiss the indictment on the ground that a second trial would violate the Fifth Amendment's prohibition against double jeopardy. Judge Oberdorfer denied these motions on December 14, 1978, and filed an order and memorandum opinion the next day. 467 F.Supp. 575 (1978). Appeals were promptly filed, most of them on December 14. This court expedited consideration of the appeals pursuant to Judge Oberdorfer's request.[3] On December 28, 1978, oral argument was heard on the Government's motion for summary affirmance, the oppositions thereto filed by the appellants, and the appellant's motion for summary reversal.
 
 
 6
 This appeal from the denial of motions to dismiss the indictment on double jeopardy grounds is properly before the court as an appealable final order. Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). We grant the Government's motion for summary affirmance and deny the motion of appellant Pina for summary reversal.
 
 
 7
 The declaration of a mistrial on the ground of manifest necessity was announced by Judge Gesell, and may also reflect the exercise of discretion by Judge Flannery.[4] It was the subject of a hearing by Judge Oberdorfer, whose findings and conclusions in the order and memorandum opinion filed December 15, 1978, review pertinent considerations. 467 F.Supp. 575 (1978). It is well established that when a criminal defendant objects to the declaration of a mistrial, retrial may nevertheless be declared on the ground of manifest necessity, or if the ends of public justice would otherwise be defeated.[5]
 
 
 8
 There are a number of judicial pronouncements that illness of a judge is an exigency which may support the declaration of a mistrial and a finding of manifest necessity, thus allowing retrial. E. g., Gori v. United States, 367 U.S. 364, 372, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961) (Douglas, J., dissenting); United States v. Whitlow, 110 F.Supp. 871, 876 (D.D.C.1953); Commonwealth v. Robson, 461 Pa. 615, 337 A.2d 573, Cert. denied, 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265 (1975); See 22 C.J.S. Criminal Law § 259, at 676 (1961).
 
 
 9
 In this case, the trial judge's inability to continue the trial had necessitated a two-week delay before mistrial was declared. During this period, the jury was at large. As Judge Oberdorfer noted, it was subject to the risk of outside pressure, although there was no evidence or finding of any such pressure.
 
 
 10
 The jury's focus of attention on the trial had been interrupted by the two-week lapse, and further distraction loomed with the impending holidays. The jury had been selected on the basis of a reasonable expectation of discharge by December, mid-December at the latest. This raised the additional problem that the jury might be subject to additional pressure resulting from a desire to decide the case expeditiously. These considerations, set forth by Judge Oberdorfer, are supportive of a declaration of a mistrial based on manifest necessity.
 
 
 11
 The problem presented by this case is whether there was sufficient effort to continue with the trial under another judge, in accordance with Rule 25 of the Federal Rules of Criminal Procedure.[6] Rule 25(a), as amended in 1966, provides that if, during the course of a jury trial, the trial judge is unable to proceed with the trial due to death, sickness or other disability, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.[7] As already noted, Judge Gesell caused inquiry to be made as to whether any other active judge would be able to take over the trial. The contentions made by appellants are that the record reveals only an apparently routine inquiry as to the availability of an active judge with an open calendar, ready to take over the case, and that the inquiry was not presented to the other judges couched as an emergency, nor was there any inquiry as to whether a judge could take on this assignment and readjust already scheduled matters. It is noted that when the case was assigned to Judge Oberdorfer, he did in fact take action to readjust his calendar so as to assure expedition for this case.
 
 
 12
 The question is thus presented whether it was an abuse of discretion for the district court to fail to go beyond relatively routine efforts at substitution, and to fail to explore calendar-shifting possibilities, as attempts to preserve the ongoing trial through the substitution provision of Rule 25. Subsection (a) of Rule 25 is a relatively recent amendment, and is the subject of questions as yet without authoritative disposition.[8] One such question is the impact of Rule 25(a), as amended, on the general rule that illness of a trial judge warrants a mistrial based on manifest necessity. In effect, appellants claim that Rule 25(a) opens up reasonable and possible alternatives that the trial judge must explore in some depth. The issue is not one which need be reached by this court in the case at bar. In view of the well-settled case law supporting declaration of a mistrial upon illness of the trial judge, and the fact that some effort was made to find a substitute, this court declines to find, in the context of this case, an abuse of discretion on the part of the various district court judges involved, in their finding of manifest necessity. In this case are also involved the special circumstances of a jury at large for a period of some weeks, the fact that several more weeks would be required for trial, and the interruption anticipated from the Christmas recess. To these must be added the time required for a new judge to familiarize himself with the record and rulings already made.
 
 
 13
 What troubles us more is the failure of the trial court to have provided defense counsel with a meaningful opportunity to make suggestions as to other reasonable alternatives. While defense counsel were permitted to comment on the mistrial decision, the record suggests that this came late in the day, after a mistrial had, for all intents and purposes, been decided upon. The nature of the adversary process requires that defense counsel be accorded a meaningful participation and hearing, rather than a cursory opportunity to comment, in a decision to declare a mistrial based on manifest necessity. The decision is of great significance, involving as it does the defendant's constitutional right to be protected from double jeopardy.[9] There is a corollary right for an effective opportunity to explore alternatives before the constitutional right is held to be inapplicable because of manifest necessity. The requirement of hearing from defense counsel prior to a mistrial decision is not a mere formality.
 
 
 14
 However, in the context of the case as a whole, we do not find that the district court abused its discretion in its finding of manifest necessity. We accordingly grant the Government's motion for summary affirmance of the denial by the district court of appellants' motions to dismiss the indictment on double jeopardy grounds and deny the motion of appellant Pina for summary reversal. The mandate of affirmance will issue the afternoon of Wednesday, January 3, 1979, permitting the trial to go forward January 4 as now scheduled, unless a stay of mandate is ordered by a Justice of the Supreme Court.
 
 
 15
 So ordered.
 
 
 
 [1]
 All appellants were charged by the indictment with one count of narcotics conspiracy, 21 U.S.C. § 846 (1976). Appellant Carl Lynch was charged with heading a continuing criminal enterprise, Id. § 848. Other appellants were charged with distribution of controlled substances, Id. § 841(a), and with one or more violations of the Travel Act, 18 U.S.C. § 1952 (1976). Twenty-two individuals were charged in the indictment, although only the ten appellants herein proceeded to trial
 
 
 [2]
 This poll was taken through an inquiry by the Chief Deputy Clerk of the District Court as to "whether (an active judge) would be able to take over the trial of Judge Flannery's narcotics conspiracy case." Defense counsel were advised that, according to the Memorandum of the Chief Deputy Clerk to Judge Gesell, dated November 24, 1978, "(e)veryone of them responded that they would be unable to do so on such short notice because they have other matters already on their calendars."
 
 
 [3]
 Judge Oberdorfer's request for expedition of appeal was presented to the motions panel. See Handbook of Practice and Internal Procedure, United States Court of Appeals for the District of Columbia Circuit, ch. IX, § D.1.d., at 50 (March 1978). This procedure originated in the Memorandum of Chief Judge Bazelon to All Court of Appeals Judges, All District Court Judges IN RE: Plan for Handling Requests by the District Court for Expediting Appeals (January 10, 1974)
 
 
 [4]
 This is the contention of Government counsel, who relies on the fact elicited at the hearing before Judge Oberdorfer, that certain defense counsel who visited Judge Flannery's chambers on November 24, 1978, in a request for information, received some advice concerning a mistrial slated for November 27
 
 
 [5]
 Mr. Justice Story's test of manifest necessity is as follows:
 We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.
 United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824), Quoted in Arizona v. Washington, 434 U.S. 497, n.18 at 506, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).
 
 
 [6]
 Rule 25 of the Federal Rules of Criminal Procedure, as amended in 1966, provides:
 (a) During Trial. If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.
 (b) After Verdict or Finding of Guilt. If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.
 
 
 [7]
 Since all defendants were willing to accept such a substitution, we need not consider whether the Constitution permits such assignment when defendant does not consent. C. Wright, Federal Practice and Procedure § 392, at 56-57 (1969)
 
 
 [8]
 See, e. g., note 7 Supra, as to the constitutional issue that may be raised by an unconsenting defendant
 
 
 [9]
 This requires consideration of both his right to determination by the jury "first impaneled," and the "competing and equally legitimate demand for public justice." Illinois v. Somerville, 410 U.S. 458, 471, 93 S.Ct. 1066, 1074, 35 L.Ed.2d 425 (1973)