**William K. POWERS and Willie Turner, Appellants,**

v.

**UNITED STATES, Appellee.**

No. 79–178.

District of Columbia Court of Appeals.

Argued Feb. 5, 1980.

Decided March 26, 1980.

Norman L. Blumenfeld, Washington, D. C., with whom Keith A. Rosenberg, Washington, D. C., was on the brief for appellants.

Constance L. Belfiore, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Michael W. Farrell and John C. Aisenbrey, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee. John W. Polk, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before KERN and PRYOR, Associate Judges, and WOLF, Associate Judge of the Superior Court of the District of Columbia.*

KERN, Associate Judge:

Appellants went to trial on the charge of operating a disorderly house, D.C.Code 1973, § 22–2722. The jury heard testimony from the first prosecution witness, Detective Farr, during the morning of Tuesday, December 12, 1978. That afternoon, the jury was excused while counsel and the court discussed the appropriate instruction to be given the jury with regard to the portion of the detective's testimony that went into matters which the court, prior to commencing trial, had directed not to be mentioned.[1]

On Wednesday, the trial judge was absent because of illness, no further proceedings took place that day and the jury was excused to return the following day.

On Thursday, December 14, counsel were called into chambers by the Acting Chief Judge of the Superior Court for a conference in light of the trial judge's continued absence due to illness. What took place at the conference was not recorded. That same day—Thursday—the Acting Chief Judge announced to the jury, assembled in the courtroom, that the trial judge was still ill and would possibly remain so into the following week. He declared a mistrial and directed the jury to return to their lounge to await their next assignment. He noted on the record his prior discussion with counsel in chambers, the objections by both the defense and the government to a mistrial, and that the following day, December 15, was the last day of the scheduled service of these particular jurors. During the ensuing colloquy with the prosecutor, the Acting Chief Judge commented that "All defendants are on bond . . . I don't see where anybody has been hurt by it [the mistrial]," and "the charge is not so earth shaking that the case has got to be tried before Christmas." (Record at 7, 8.)

 Appellants subsequently sought to have the trial court dismiss their charge with prejudice on double jeopardy grounds. The trial judge to whom his case had been assigned for all purposes denied such motion.[2] He noted that at the time of his illness which interrupted the trial there had been an order extant from the Chief Judge of the Superior Court directing that no further trials were to be scheduled because of the impending Christmas holiday.

 Appellants vigorously contend (Brief at 8), they "should not have to stand trial again unless a truly compelling reason for the declaration of mistrial existed on December 14, 1978 . . . [and] [s]uch manifest necessity[3] was absent and the policy and justification underpinning the double jeopardy clause warrant dismissal of the informations . . . ."[4] Specifically, ap-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. The trial judge had ruled pursuant to defendants' request that the scope of the government's case be confined to time periods during 1978 relevant to dates set forth in the informations. Detective Farr, the government's first witness, testified as to his observations of the house in question during 1977. The defendants declined to move for a mistrial. The trial court instructed defendants to prepare a limiting instruction with regard to the allegedly prejudicial testimony and trial was adjourned for such preparation.

2. An order denying a motion to dismiss on double jeopardy grounds is immediately appealable. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

3. "Manifest necessity" is the oft-quoted phrase of Justice Story in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

4. The Supreme Court in *Arizona v. Washington,* 434 U.S. 497, 516–17, 98 S.Ct. 824, 835–36, 54 L.Ed.2d 717 (1978), recognized that the trial judge, when declaring a mistrial, need not employ the express language "manifest necessity" or even issue findings of fact in order to have his action upheld; the record need only reveal a manifest necessity for the mistrial. As appellants state in their brief (Reply Brief at 5), the trial judge need not articulate his findings or set forth conclusions regarding the other options, so long as the record supports his final analysis that a mistrial was manifestly necessary and urgent circumstances required his aborting the trial. *See also United States v. Grasso,* 600 F.2d 342, 346 (2d Cir. 1979).

pellants forcefully argue that there was simply no justification for the mistrial; since Super.Ct.Cr.R. 25(a)[5] provides for certification of a substitute judge when the judge before whom a trial has commenced is taken ill, the trial court had a "viable alternative to declaring a mistrial." Moreover, in appellants' view, a continuance could have been ordered in lieu of declaring a mistrial until the length of the trial judge's illness could have been ascertained with more certainty.

Appellants similarly reject the trial court's reliance upon the proximity of (a) Christmas and (b) the end of the juror's scheduled service, *viz.*, December 15, in declaring a mistrial on December 14. They contend that the holiday, 11 days away, was too remote to constitute any undue pressure on the jury in deliberating upon and deciding the case. In addition, they argue that the parties at the outset had told the prospective jurors before their selection that the trial might run as long as ten days, thereby alerting them that they could be in court beyond the 15th of December, their last day of scheduled service. ·

■ This court, in assessing whether the declaration of a mistrial by the trial court was proper, must avoid the temptation of considering whether it would have ruled differently had it been called upon to decide, first-hand, the matter at issue.[6] Rather, our role on review is to insure that the trial court's decision to terminate the proceedings by mistrial was "reasonably and deliberately" taken after according "careful consideration to [defendants'] . . . interest in having the trial concluded in a single proceeding." *Arizona v. Washington,* 434 U.S. 497, 516, 98 S.Ct. 824, 835, 54 L.Ed.2d 717 (1978).

■ Here, we conclude the court exercised sound discretion in declaring a mistrial given the three factors with which it was confronted: (1) the interruption of the jury's consideration of and deliberation upon the testimony of the prosecution's key witness from noon of Tuesday (when he commenced testifying) until at least the following Monday when the judge might, at best, have been able to return; (2) the risk of jury contamination, enhanced by each day it was in recess awaiting the return of the absent judge; and (3) the pressure on the jury to short-cut deliberation and expedite decision by reason of the proximity of the day of possible resumption of the trial, Monday, December 18, to Christmas and the consequent extension of the jurors' service beyond their scheduled "last day," *viz.*, December 15.

■ As to appellants' vigorous contention that Rule 25 enabled the trial court to transfer another judge to the instant case and proceed with the trial on Thursday, December 14, this assertion overlooks "the sensitive problem of possible juror bias," *Arizona v. Washington, supra* at 516, 98 S.Ct. at 835, created in the instant case by the first witness' improper testimony to the jury. After all, the judge and counsel had spent a half day of trial time on Tuesday, December 12, fashioning a remedy, based upon special instructions, for overcoming potential jury bias. The "substitute" judge who might have entered the case on Thursday pursuant to Rule 25 as appellants strenuously urge was possible, would have required a reasonable amount of time to acquaint himself fully with the grave problem

**5.** Super.Ct.Cr.R. 25(a) provides:

If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial. ·

**6.** "If retrial of the defendant was barred whenever an appellate court views the 'necessity' for a mistrial differently than the trial judge, there would be danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent [jury] deadlock." *Arizona v. Washington, supra* at 510, 98 S.Ct. at 832. While *Arizona* referred to pressures on the trial judge to keep a hung jury deliberating, similar pressures in the instant case could coerce a trial judge to keep a jury functioning in the face of substantial risk of contamination through delay.

of potential jury bias that had arisen and the curative instruction contemplated by the absent judge. Therefore, we reject the argument that invoking Rule 25 would have enabled this trial to resume before Monday, December 18. We conclude that under the unique circumstances, the action of the Acting Chief Judge in declaring a mistrial was not "irrational or irresponsible," *Arizona v. Washington, supra* at 515–16, 98 S.Ct. at 835, and was supported by manifest necessity as shown on the record.[7]

We therefore affirm the trial court's denial of appellants' motion to dismiss on double jeopardy grounds and remand the case for trial.

*So ordered.*

---

7. As the federal appellate court recognized in *United States v. Grasso, supra,* any one of a number of circumstances relied upon by a trial court in declaring a mistrial might not, standing alone, be sufficient to support its decision; however, when all the circumstances are considered "in combination," as must be done under the teaching of *Arizona,* then the grant of mistrial may be proper, as was the case here.