**UNITED STATES of America**

v.

**Hellfried E. SARTORI.**

**Crim. No. R–82–00232.**

United States District Court, D. Maryland.

March 18, 1983.

---

428

Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Michael E. Marr, Stephen A. Hecker, and Marr & Bennett, P.A., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The undersigned member of this Court has been assigned this case for the limited purpose of deciding a motion to dismiss, filed by the defendant on the ground of double jeopardy under the Fifth Amendment. The motion came on for hearing on Friday, February 18, 1983, and is now ready for decision.

### I. *Background*

The defendant, Hellfried E. Sartori, is charged in an indictment with three violations of 21 U.S.C. §§ 331(d), 333(b), and 355 for alleged fraudulent interstate distribution of drugs not approved by the Food and Drug Administration (FDA).

The Government's theory of the case, expressed in the opening statement, was that the defendant defrauded cancer patients by selling them cesium chloride, a substance not approved by the FDA for cancer treatment, as a cure for cancer. The defendant allegedly fraudulently induced these cancer victims to pay $2,000 for an amount of cesium chloride worth $65.

The defendant was arraigned on June 25, 1982 before the Honorable Joseph H. Young.

The prosecutor was apparently aware of the work of Judge Young with the American Cancer Society (ACS). At the end of the arraignment proceedings, the following colloquy[1] took place between Judge Young and counsel:

"MS. GORDON (prosecutor): ... since this case does involve at least in part the treatment of cancer patients, the Government, in an abundance of caution would

1. Paper No. 30, Transcript of Arraignment, Tr. 17–18.

ask the Court to inform counsel and the Defendant of your own activities in that regard, if you think it's appropriate.

THE COURT: I guess that I am the self-styled lay leader in the American Cancer Society. I am a former Chairman of the National Board. I am presently on the Board of Directors as Delegate at Large or Director at Large, and chair some of the committees. And, I participate actively in the Cancer Center.

MR. MARR (defendant's counsel): How does Your Honor feel about holistic medicine and its approach to the treatment of cancer victims?

THE COURT: There is a committee of unproven methods. I am not on that committee and I have not participated in any discussions relating to medical matters, except in research matters related to public issues.

The organization delayed, it delayed individuals being involved in it. The American Cancer Society is composed of 50 percent medical people and 50 percent lay, and I am on the lay side, so if you have any reason, either of you, please tell me now; of course if you think that I should recuse myself, I will be happy to do so.

MS. GORDON: Thank you, Your Honor.

MR. MARR: Thank you, Your Honor.

THE COURT: Anything further?

MR. MARR: No, Your Honor. Thank you very much.

MS. GORDON: Thank you very much."

At the pre-trial conference, Judge Young again reminded counsel of his ACS-related activities, and neither counsel requested his recusal. Neither the Government nor defense counsel indicated any objection to Judge Young continuing to handle the case.

When the case was called for trial on November 8, 1982, prior to the impaneling of the jury, Judge Young noted a proposed voir dire question, advanced by the defense, requesting that potential jurors be asked if they or members of their families had ever been active in the American Cancer Society.[2] Judge Young again reminded counsel of his ACS activities, but was assured by counsel that the objectives and programs of the American Cancer Society were not at issue in the case and that they saw no need for him to recuse himself.[3]

During the voir dire proceedings, the prosecutor brought to Judge Young's attention that he had not asked the Government voir dire questions relating to laetrile and DMSO. The colloquy at the bench went as follows:

"MS. GORDON: ... Also, Your Honor, you didn't ask the questions about laetrile and DMSO. There will be testimony in this case, somewhat incidental, about it.

THE COURT: What does laetrile have to do with this case? I would think it's incidental.

MS. GORDON: Well, Dr. Sartori used laetrile and DMSO in addition to cesium chloride.

THE COURT: He's not being charged with that.

MS. GORDON: True. But the witnesses, when they describe the cancer therapy, may mention that in addition to the ...

THE COURT: They will not be allowed to mention it as far as I'm concerned. How is it relevant?

MS. GORDON: It may not be severable.

MR. MARR: Judge, can I say something? It may not be. There will be testimony, I think, that laetrile is a substance that enhances cesium and rubidium uptake by cancer cells. That, of

---

**2.** Paper No. 32, Judge Young's Memorandum and Order at 4. This Memorandum and Order, although made available for reading by counsel immediately after the declaration of a mistrial, was inadvertently not signed or filed in the court file until February 25, 1983.

**3.** *Id.,* Paper No. 32; Defendant's Memorandum in Support of Motion to Dismiss at 2, Paper No. 31.

course, would make it relevant, at least from our point of view.

MS. GORDON: It was part and parcel of what Dr. Sartori was doing.

THE COURT: I feel like I'm back to last week with DMSO.

MR. MARR: We can't get away from it.

MS. GORDON: Right." [4]

At another point in the colloquy between counsel and the Court at the bench, the prosecutor told the Court that "some people know laetrile by the name of Vitamin B–17." [5]

Judge Young asked the following question on voir dire:

"Earlier I referred to the drug cesium chloride. There may be, during the course of the trial, reference to certain other drugs used in cancer treatments on some occasions—specifically, laetrile and Vitamin B–17 and DMSO.

Has any member of the panel or close personal friend ever used any of these substances, do you know anything about them, have you ever had any contact with them or worked with them?" [6]

A jury was thereafter chosen and sworn.

Later that day, the Government's third witness, Dr. Keith Brewer, testified to certain approaches to cancer treatment which he endorsed, involving the uses of substances other than cesium chloride, such as laetrile and vitamins. [7]

According to Judge Young's Memorandum and Order, it was at this point that he "... no longer believed that [his] long involvement in the field of cancer was consistent with the appearance of judicial propriety which is so critical to the criminal justice system." [8]

At the conclusion of the testimony of Dr. Brewer, Judge Young called counsel to the bench for a conference. Unfortunately, the bench conference was unrecorded. [9]

According to Judge Young's Memorandum:

"At that time the Court's concerns were explained to counsel. In particular, counsel were told that the Court did not wish to be put in a situation where someone familiar with the Court's activities in the field of cancer might question the impartiality of the Court's actions in the instant case. Counsel were further informed that, while the Court realized that the jury was the trier of fact, the Court would have to rule on evidentiary questions and defendant's promised motion for judgment of acquittal as well as determine the defendant's sentence if the jury returned a conviction. The Court asked defendant's counsel if he would agree to permit another judge to sentence the defendant. The defendant's counsel replied in the negative. At the conclusion of the conference at the bench, the trial resumed for approximately a half hour during which time the Court considered alternatives to a mistrial, but determined there were none available in light of § 455(a) and the ends of justice." [10]

There were two subsequent off-the-record discussions at the bench with counsel [11] before Judge Young advised the jury at the conclusion of the testimony of the next witness that:

"... a mistrial in this case is required by manifest necessity since the ends of public justice, it seems to me, at this time could be defeated by allowing the trial to continue." [12]

---

4. Paper No. 34, Transcript of Proceedings, Tr. 42–43.

5. Paper No. 34, Tr. 46.

6. Paper No. 34, Tr. 47.

7. Paper No. 34, Tr. 147–51.

8. Paper No. 32, Judge Young's Memorandum and Order at 4.

9. Paper No. 34, Tr. 154.

10. Paper No. 32, Judge Young's Memorandum and Order at 5–6.

11. Paper No. 34, Tr. 163, 176.

12. Paper No. 34, Tr. 176.

During the unrecorded bench conferences, defense counsel objected to the declaration of a mistrial.[13]

Apparently, during the various unrecorded bench conferences, the Government counsel expressed concern that the declaration of a mistrial might result in a bar to retrial through the Double Jeopardy Clause of the Fifth Amendment.[14]

At the hearing before the undersigned judge on the double jeopardy motion, Government counsel stated that she asked Judge Young not to declare a mistrial but, instead, to have another judge assigned to take over the trial. According to her and not disputed by defense counsel, Judge Young said that he could not do that and gave as his reason that Judge Murray of this Court had been reversed by the Fourth Circuit Court of Appeals for doing the same thing recently. Judge Young was apparently referring to the decision of the Fourth Circuit in *Whalen v. Ford Motor Credit Co.*, 684 F.2d 272 (*en banc*), *cert. denied*, —— U.S. ——, 103 S.Ct. 216, 74 L.Ed.2d 172 (1982), a civil case.

After this case was reassigned to Judge Ramsey for trial, the defendant filed his motion to dismiss on the ground of double jeopardy.

II. *Discussion*

■ The Supreme Court has recognized that there are two entirely different situations leading to the declaration of a mistrial and that those situations are governed, in the double jeopardy context, by different legal standards. The first type of situation is one in which, as here, the defendant has objected to the declaration of a mistrial. In that case, a new trial may be held, without violation of the Double Jeopardy Clause, only if there was a "manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated." *United States v. Perez,* 22 U.S. (9 Wheat.) 579 at 580, 6 L.Ed. 165 (1824); *Illinois v. Somer-*

*ville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

■ In the second type of situation, a new trial may be held, without violation of the Double Jeopardy Clause, when the original trial was ended through a request for the mistrial, or a consent thereto, by defense counsel *unless* the judge's misconduct or the prosecutor's intentional provocation induced the defendant's mistrial request. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

It is the former type of situation with which the court is concerned in the present case. Ever since *United States v. Perez,* it has been recognized that courts are to exercise "a sound discretion on the subject in determining whether or not to declare a mistrial," *Wade v. Hunter, supra* 336 U.S. at 688–92, 69 S.Ct. at 836–39; *Gori v. United States, supra* 367 U.S. at 368–69, 81 S.Ct. at 1526; *Illinois v. Somerville, supra* 410 U.S. at 461–62, 93 S.Ct. at 1069.

■ Where a judge determines that "his impartiality might be reasonably questioned," 28 U.S.C. § 455(a), he may recuse himself even if the parties to the proceeding waive any objection to his participation in the proceeding. This is clear from the language of 28 U.S.C. § 455(e) which states:

"Where the ground for disqualification arises only under subsection (a) waiver *may* be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification."

(Emphasis supplied). Section 455(a) reversed the old principle embodying a

---

**13.** Paper No. 34, Tr. 179. Paper No. 31, Defendant's Memorandum at 2–3; Paper No. 35, Government's Memorandum in Opposition to Defendant's Motion to Dismiss at 2–3.

**14.** Paper No. 31, Defendant's Memorandum at 3; Paper No. 35, Government's Memorandum at 3.

judge's duty to sit when not clearly disqualified. *Rice v. McKenzie*, 581 F.2d 1114, 1116 (4th Cir.1978). When the objective facts warrant it, justifying a conclusion that a reasonable person could have a reasonable basis for doubting the judge's impartiality, a judge, in the reasonable exercise of his discretion, can refuse to accept a waiver by the parties and conclude, as did Judge Young, that the overall appearance of impartiality to the general public is more important than the views of the individual litigants on the subject.

▮ While the record facts are skimpy in this case as to whether or not the American Cancer Society has any official or semi-official positions in connection with the treatment of cancer which are inconsistent with the theory of the defense, the court accepts the conscientious judgment of Judge Young, who is familiar with the positions of the American Cancer Society, that there is a factual basis for a reasonable person to have a doubt about his impartiality under the circumstances. Nothing herein should be construed to imply that Judge Young was, in any way, actually biased or partial. Having concluded, however, that a trial judge, acting within his sound discretion, may recuse himself under the provisions of 28 U.S.C. § 455(a), even after a jury has been impaneled, when the circumstances have convinced him at that time that he should do so in the interests of promoting "the ends of public justice," *United States v. Perez, supra* 22 U.S. (9 Wheat.) at 580, the undersigned judge believes that the effect of that action in the double jeopardy context still requires further inquiry.

The Fourth Circuit has said recently: "Because of the differing factual situations which might mandate a mistrial, the Court has consistently refused to apply the standard in a rigid or mechanical fashion. *E.g., Arizona v. Washington, supra,* 434 U.S. [497] at 506 [98 S.Ct. 824 at 830, 54 L.Ed.2d 717]; *Illinois v. Somerville, supra,* 410 U.S. at 462–66 [93 S.Ct. at 1069–1071]. Instead, each case must be carefully examined to determine if a 'high degree' of necessity supports the mistrial order. *Arizona v. Washington, supra,* 434 U.S. at 506 [98 S.Ct. at 831]. In addition, *Arizona* and prior cases hold that a reviewing court must determine that the trial judge did not act irrationally or irresponsibly, and that the mistrial order reflects the exercise of sound discretion. 434 U.S. at 514 [98 S.Ct. at 834]. . . .

In determining whether the trial judge exercised sound discretion in declaring a mistrial, *we must consider if there were less drastic alternatives to ending the trial.* If less drastic alternatives than a mistrial were available, they should have been employed in order to protect the defendant's interests in promptly ending the trial and the Commonwealth's interests in rapid prosecution of offenders."

(Footnote omitted) (Emphasis supplied). *Harris v. Young,* 607 F.2d 1081 at 1085 (4th Cir.1979).

While Judge Young did consider the alternative, in the event of a guilty verdict, of substituting a judge to sentence the defendant, which was rejected by defense counsel, he apparently did not give adequate consideration to the alternative, provided by Rule 25(a), Fed.R.Crim.P., of substituting a judge for himself during the trial itself. Rule 25(a), Fed.R.Crim.P., provides:

"If by reason of death, sickness or other *disability* the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial."

(Emphasis supplied). The term "other disability" in Rule 25 appears to include disability by reason of recusal. *Bennett v. United States,* 285 F.2d 567, 572 (5th Cir. 1960), *cert. denied,* 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961).

While Rule 25(a), Fed.R.Crim.P., was apparently not specifically mentioned by counsel during the unrecorded bench conferences, it does appear that the possibility of a substitution of a judge for Judge

Young during the trial was raised by Government counsel. The rejection of the proposal by Judge Young, on the apparent basis of the Fourth Circuit's ruling in *Whalen v. Ford Motor Credit Co., supra,* was in error. In *Whalen,* a civil case, the Fourth Circuit specifically noted that the Federal Rules of Civil Procedure have no counterpart to Rule 25(a) of the Federal Rules of Criminal Procedure and, for that reason, concluded that the substitution of a trial judge during the course of a jury trial is not allowed in civil cases as it would be in an appropriate criminal case.

Both the prosecutor and defense counsel, although perhaps for different reasons, wished the case to proceed and objected to a mistrial. The suggestion that another judge be substituted prior to verdict was rejected out of hand. No reasons appear on the record for said rejection other than the erroneous conclusion that substitution was precluded by the Fourth Circuit ruling in *Whalen.*[15]

Rule 25(a) has been considered recently under circumstances different from those here, but in a manner instructive to the issue here presented. In *United States v. Lynch,* 598 F.2d 132 (D.C.Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1287, 59 L.Ed.2d 498 (1979), a mistrial was declared in a narcotics conspiracy trial after the jury had been impaneled, numerous documents had been admitted into evidence and 43 witnesses (most of whom were custodians of documents) had testified. The trial was then postponed from November 13, 1978 to November 20, 1978 and again from November 20th to the 27th due to the illness of the trial judge. On November 27th, another judge of the court announced that the

bench had been polled by the Chief Deputy Clerk and that none of the other judges could assume responsibility for the trial on such short notice because of other matters on their calendars. A mistrial was declared over the objection of the defendants.

The United States Court of Appeals for the District of Columbia Circuit affirmed the denial of the defendants' motions to dismiss on grounds of double jeopardy. The court found manifest necessity for declaration of a mistrial because the trial had already been delayed two weeks during which the jury was at large, and the jury was subject to possible outside pressure and distraction during the delay. The jury could have been distracted from their duties by the upcoming Christmas holiday and by their reasonable expectation created before the delay that they would be discharged by, at the latest, mid-December.

The court considered whether there was sufficient effort by the trial court to substitute a judge pursuant to Rule 25(a).

"The question is thus presented whether it was an abuse of discretion for the district court to fail to go beyond relatively routine efforts at substitution, and to fail to explore calendar-shifting possibilities, as attempts to preserve the ongoing trial through the substitution provision of Rule 25."

598 F.2d at 135.

The court answered the question in the negative. It concluded that, under the circumstances, including the two-week delay which had already ensued, the impending holidays, and the possible pressure placed on the jury, it was sufficient that the trial

**15.** The record does not reflect that there was any discussion of the constitutionality of Rule 25(a). There is some authority for the proposition that Rule 25(a) is unconstitutional. *See* 2 Wright, § 392 at 402 (2d ed. 1982). *But see United States v. LaSorsa,* 480 F.2d 522 (2d Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); 8A *Moore's Federal Practice,* ¶ 25.03[2] at 25–5 (2d ed. 1982). If the anticipated defense motion for judgment of acquittal had been one which would have depended on the assessment by the trial judge of the credibility of the witnesses, a strong argument

could be made that it would have been constitutionally inappropriate to utilize Rule 25(a). In this case, however, the motion, which Judge Young had been told would be filed for acquittal at the time of the completion of the Government's evidence, was one which raised an issue of law which had already been ruled upon by Judge Young, Tr. 4–6; 58–59. Under the facts of this case, the undersigned judge believes that Rule 25(a) could have been constitutionally utilized. *Connelly v. United States,* 249 F.2d 576 (8th Cir.1957).

court had made "some effort" to substitute a judge.

Although the court in *Lynch* upheld the trial court's decision, based on the poll of judges that was actually conducted, it nevertheless disapproved of the trial court's failure to provide counsel with a meaningful opportunity to make suggestions for disposition of the case.

"What troubles us more is the failure of the trial court to have provided defense counsel with a meaningful opportunity to make suggestions as to other reasonable alternatives. While defense counsel were permitted to comment on the mistrial decision, the record suggests that this came late in the day, after a mistrial had, for all intents and purposes, been decided upon. The nature of the adversary process requires that defense counsel be accorded a meaningful participation and hearing, rather than a cursory opportunity to comment, in a decision to declare a mistrial based on manifest necessity. The decision is of great significance, involving as it does the defendant's constitutional right to be protected from double jeopardy. There is a corollary right for an effective opportunity to explore alternatives before the constitutional right is held to be inapplicable because of manifest necessity. The requirement of hearing from defense counsel prior to a mistrial decision is not a mere formality."

598 F.2d at 136 (footnote omitted).

Counsel in the instant action were apparently given an opportunity, before a mistrial was declared, to make suggestions, but this opportunity was not "meaningful." Counsel were in the process of trying a case and were expected to offer their suggestions during trial without the benefit of research. They were not given an opportunity to examine the decision in *Whalen.* No effort was made to determine if another judge of this Court was available to take over the trial. In the absence of an actual effort at substitution such as was made in *Lynch,* the failure of the trial court in this case to provide counsel with a meaningful

opportunity to offer alternatives undermines its finding of manifest necessity for declaring a mistrial.

*Powers v. United States,* 412 A.2d 1205 (D.C.App.1980), also involved the declaration of a mistrial due to a trial judge's illness. The defendant's trial for operation of a disorderly house began on December 12, 1978, but was suspended on December 13th because the judge was absent. On Thursday, December 14th, the Acting Chief Judge declared a mistrial over the objection of defense counsel. The defendant moved for a dismissal of the charges with prejudice on double jeopardy grounds, arguing that a viable alternative to a mistrial existed—namely, the appointment of a substitute judge. The defendant's motion was denied, and the denial was affirmed on appeal.

The appellate court concluded that the trial judge's decision to declare a mistrial was " 'reasonably and deliberately' taken after according 'careful consideration to [defendant's] . . . interest in having the trial concluded in a single proceeding.' " 412 A.2d at 1207 quoting *Arizona v. Washington,* 434 U.S. 497, 516, 98 S.Ct. 824, 835, 54 L.Ed.2d 717 (1978). The court rejected the contention that a new judge should have been substituted under Rule 25. During the testimony of the first witness, a serious issue of jury bias arose that would have had to be corrected by a curative instruction. The trial judge and counsel had spent a half-day of trial time on December 12 fashioning a remedy based on special instructions for overcoming potential jury bias. The court found that the substitute judge would have required much time to acquaint himself fully with the grave problem and the curative instruction contemplated by the absent judge.

The record in the instant case reveals no circumstances similar to those in *Powers* or *Lynch* for rejecting the substitution of, or, at least, the effort to substitute, judges. Therefore, the trial was aborted without manifest necessity and the defendant's motion to dismiss will be granted.

Accordingly, it is this 18th day of March, 1983, by the United States District Court for the District of Maryland, ORDERED:

The defendant's motion to dismiss (Paper No. 31) is GRANTED.